IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

EARLENE PETERSON
KIMMA GUREL
MONICA VIELLETTE,
Plaintiffs-Appellees

v.

WILLIAM P. BARR, ATTORNEY GENERAL, et al.,
Defendants-Appellants

No. 20-2252

**REPLY IN SUPPORT OF EMERGENCY MOTION TO SUMMARILY STAY OR VACATE PRELIMINARY INJUNCTION BARRING THE EXECUTION OF DANIEL LEWIS LEE**

DAVID M. MORRELL
  *Deputy Assistant Attorney General*

JOSH J. MINKLER
  *United States Attorney*

SOPAN JOSHI
  *Senior Counsel to the Assistant
  Attorney General*

PAUL R. PERKINS
  *Special Counsel*

MELISSA N. PATTERSON
AMANDA L. MUNDELL
  *Attorneys, Appellate Staff
  Civil Division, Room 7236
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (202) 514-3469
  amanda.l.mundell@usdoj.gov*

The death sentence imposed for Daniel Lewis Lee's horrific crimes vindicates the interests of both the public at large and *all* his victims. Although Plaintiffs are among those victims, they are not the only ones; they are not even the only victim family members with plans to travel to Terre Haute tomorrow, *see Hartkemeyer v. Barr*, Case No. 2:20-cv-00336, Dkt. No. 51-1, ¶¶ 11–12 (Winter Decl.). And while in seeking a death sentence, the statements of victims and their families are given weight, *see* 18 U.S.C. § 3593(a), the views of any particular victim control neither the wishes of the others nor the government's decision about whether and when to seek and carry out the ultimate punishment. All the more so here, where plaintiffs' concerns about traveling during the COVID-19 pandemic should be assessed in light of their vocal *opposition* to Lee's execution, while there are other family members of the victims of Lee's crimes who have no less weighty interests at stake in the immediate and lawful implementation of this long-delayed sentence. And even if all victims did oppose capital punishment, that still would not eliminate the government's very real and substantial interest in carrying out this execution—an interest that plaintiffs' response entirely overlooks, despite the Supreme Court's repeated admonitions. *See Bucklew v. Precythe*, 139 S. Ct. 1112, 1133 (2019); *Hill v. McDonough*, 547 U.S. 573, 584 (2006). Plaintiffs' failure to respond to those authorities is telling.

Indeed, plaintiffs' response is most notable for its silence on a number of key points. Plaintiffs largely do not dispute that the FDPA generally leaves execution dates to the government's discretion and confers no rights on execution witnesses.

Nor could they:  the FDPA places no limits on the Attorney General's discretion to determine when a sentence is to be carried out once an inmate's appellate and post-conviction proceedings are exhausted, let alone who shall be permitted to attend.  *See* 18 U.S.C. § 3596(a) (directing that "when the sentence is to be implemented, the Attorney General shall release the person" to the U.S. marshal, "who shall supervise [its] implementation").

Plaintiffs nevertheless echo the district court's novel theory that the FDPA incorporates every last detail of a state's execution procedures, and that because Arkansas law permits family members of victims to attend an execution, the FDPA confers enforceable rights.  For starters, plaintiffs implicitly concede that the district court's FDPA-based rationale for barring Lee's execution was never once raised by the parties below and was in fact explicitly rejected by Lee himself in the D.C. Circuit. More fundamentally, and perhaps relatedly, the FDPA does no such thing, *see* Motion at 13–14.  Plaintiffs entirely fail to address the FDPA's text incorporating only state law regarding "the manner" of "implementation of the [death] sentence."  18 U.S.C. § 3596(a).  Instead, they focus only on the fact that the Arkansas provisions the district court cited are indeed "prescribed by law," since they appear in the Arkansas Code.  *See* Response at 16–17.  That misses the point.  As acknowledged by both concurrences, the dissent, and the inmates themselves in the D.C. Circuit case on which plaintiffs rely, those provisions do not go to the "manner" of effectuating the death sentence.  Nor do plaintiffs have any explanation why the provisions of

Arkansas law they belatedly invoke—which impose a *limit* on attendance—somehow provide a *right* to attend, much less to force the executioner to coordinate potential attendees' willingness and ability to travel. *See* Motion at 13 (discussing the "not more than" language in Ark. Code § 16-90-502(c)).

Apparently recognizing that Arkansas law provides them no basis on which to assert an APA claim, plaintiffs pivot to BOP's execution protocol, which the district court itself did not invoke. But that reliance is misplaced. The protocol states that BOP "will ask the United States Attorney for the jurisdiction in which the inmate was prosecuted to *recommend* up to eight individuals who are victims or victim family members to be witnesses of the execution." *See* Dkt. 1, Exh. A to the Complaint ("BOP Protocol"), Ch. 1, III.G.1.c.(1), 10-11 (emphasis added). The protocol therefore contemplates recommendations on whom to permit to attend; it does not require BOP to choose such individuals or to arrange the scheduling to accommodate those individuals.

Also unaddressed by plaintiffs' response is how it would be feasible to require BOP to consider the individual ability and willingness of every potential execution attendee to travel to and attend the execution. Indeed, plaintiffs suggest that BOP was required to consider not just their plans, but their ages, health, and locations in selecting an execution date. The unreasonableness and impracticability of imposing such a requirement in all capital cases—which can involve such dozens or hundreds of victims and family members, as in the cases of Timothy McVeigh and Dylann

3

Rooff—is self-evident, whether or not a pandemic exists. Whether viewed as another reason to acknowledge that scheduling decisions are committed to BOP's discretion or as another reason that failure to explicitly account for witness availability in scheduling an execution does not render the government's choice arbitrary and capricious, that impracticality makes clear that plaintiffs' claims lack merit.

In sum, even if plaintiffs need only demonstrate a "better than negligible" chance of success on the merits, *see* Response 14–15 (quoting *Whitaker By Whitaker v. Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1046 (7th Cir. 2017) (quoting *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999))); *but see Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (requiring that the "irreparable injury" be "*likely* in the absence of an injunction"), their novel claim falls well short of even that meager standard. And regardless, "[w]holly apart from the merits, … the balance of harms and the public interest strongly favor the government," and thus independently warrant denial of injunctive relief here. *In re FBOP Execution Protocol Cases*, 955 F.3d 106, 126-27 (D.C. Cir. 2020) (Katsas, J., concurring).

## CONCLUSION

This Court should immediately stay or summarily vacate the district court's order barring the government from proceeding with Lee's execution, which is scheduled for 4:00 E.D.T. on Monday, July 13, 2020.

Respectfully submitted,

DAVID M. MORRELL*
  *Deputy Assistant Attorney General*

JOSH J. MINKLER
  *United States Attorney*

SOPAN JOSHI
  *Senior Counsel to the Assistant*
  *Attorney General*

PAUL R. PERKINS
  *Special Counsel*

MELISSA N. PATTERSON
AMANDA L. MUNDELL
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7236*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-3469*
  *amanda.l.mundell@usdoj.gov*

*The Acting Assistant Attorney General is recused in this case.

July 2020

5

## CERTIFICATE OF COMPLIANCE

I hereby certify that this motion satisfies the type-volume limitation in Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 1028 words.  This motion also complies with the typeface and type-style requirements of Rule 32(a)(5) and Rule 32(a)(6) because it was prepared using Microsoft Word 2016 in Garamond 14-point font, a proportionally spaced typeface.

/s/ Amanda L. Mundell
AMANDA L. MUNDELL

# CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2020, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system. Parties to the case are represented by a registered CM/ECF user, and service will be accomplished by the appellate CM/ECF system. The foregoing was also sent by email to Howard B. Kurrus at bkurrus@aol.com.

*/s/ Amanda L. Mundell*
AMANDA L. MUNDELL