

**U.S. Department of Justice**

Civil Division, Appellate Staff

950 Pennsylvania Ave. NW, Rm. 7230
Washington, DC 20530

Tel: (202) 514-1201

VIA CM/ECF

July 12, 2020

Christopher G. Conway
Office of the Clerk
United States Court of Appeals for the Seventh Circuit
Everett McKinley Dirksen United States Courthouse
219 S. Dearborn Street
Room 2722
Chicago, IL 60604

RE:      *Peterson v. Barr*, No. 20-2252 (7th Cir.)

Dear Mr. Conway:

We write to inform the Court of a new complaint and request for a preliminary injunction filed by Daniel Lewis Lee in *Lee v. Barr*, No. 2:20-cv-357 (S.D. Ind.), in which Lee seeks to halt his execution based on the district court's ruling in *Peterson v. Barr*, No. 2:20-cv-00350 (S.D. Ind.). Lee's eleventh-hour motion for a preliminary injunction (attached here) claims that the Federal Death Penalty Act (FDPA) entitles him to counsel during post-conviction proceedings, *see* No. 2:20-cv-357, Dkt. 7, at 5–6 (citing 18 U.S.C. § 3599). Like the plaintiffs in *Peterson*, he also argues (for the first time) that a combination of the FDPA, Arkansas law, and applicable federal regulations entitles his counsel to be present at his execution, Dkt. 7, at 4–7, and that BOP's execution schedule violates the Administrative Procedure Act.

This development highlights the need for this Court to swiftly grant the relief the government has requested by either summarily staying or vacating the district court's erroneous injunction entered yesterday in *Peterson*. Lee's belated

filing illustrates the absurdity of the district court's rationale, which suggests that an inmate's own attorney's unwillingness or inability to attend could prevent his client's execution.

Further, the government wishes to inform the court that, given the imminence of tomorrow's execution date, the government has now sought relief from the district court's preliminary injunction in the Supreme Court. *See Barr v. Peterson*, No. 20A5 (S. Ct.).

Sincerely,

*/s/ Melissa N. Patterson*
MELISSA PATTERSON
Attorney, Appellate Staff
Civil Division

cc:     counsel (via CM/ECF)

****THIS IS A CAPITAL CASE****
EXECUTION SCHEDULED FOR JULY 13, 2020

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| DANIEL LEWIS LEE,<br><br>          Plaintiff,<br><br>    v.<br><br>WILLIAM P. BARR, in his official capacity as Attorney General of the United States; MICHAEL CARVAJAL, in his official capacity as Director of the Federal Bureau of Prisons; and T.J. WATSON, in his official capacity as Complex Warden for Terre Haute Federal Correction Complex,<br><br>          Defendants. | Case No. 2:20-cv-00357-JRS-DLP |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Daniel Lewis Lee respectfully submits this memorandum in support of his Motion for Preliminary Injunction, asking this Court to enjoin Defendants from executing him on July 13, 2020, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). Mr. Lee can demonstrate his likelihood of success on the merits of his claim: that Defendants acted in an arbitrary and capricious manner, abused their discretion and failed to act in accordance with law when they set an execution date in the middle of a nationwide health crisis that grows more dire by the day, and which constructively deprived Mr. Lee of his right of access to counsel to which he is entitled under the same law – the Federal Death Penalty Act ("FDPA") (18 U.S.C. § 3596 et seq.) and its implementing regulations (28 C.F.R. § 26) – that give Defendants the right to execute him in the first place. Mr. Lee can also show that he will suffer irreparable harm in the

absence of an injunction, and that the balance of harm and the public interest weigh heavily in

his favor.  Mr. Lee, therefore, respectfully requests that the Court grant his motion.

### Introduction

Defendants to this lawsuit, United States Attorney General William Barr, Bureau of

Prisons Director Michael Carvajal, and T.J. Watson, the Warden at the Federal Correctional

Complex—Terre Haute (which includes USP Terre Haute), plan to execute Daniel Lee this

Monday, July 13, 2020, at 4 p.m.  Defendants chose this date on which Mr. Lee is to be

executed, in the middle of a rapidly deteriorating pandemic. There is no doubt about the fact that

COVID-19 can be lethal, and has already killed over 130,000 people in the United States. When

it doesn't kill, it can cause permanent damage to multiple organs, including the lungs, heart, liver

and kidneys.  Even "mild" cases can last for weeks, cause labored breathing, fevers, a cough, and

excruciating joint pain.

Nor is there any doubt that the disease is easily transmissible, and that much of the

transmission comes from people who are asymptomatic or pre-symptomatic.  Because it is

impossible without testing someone to know whether he or she has COVID, screening measures

for the virus are largely ineffectual.  That means, the person in proximity to you in the airport, or

on an airplane, or in the public restroom, may be infectious and transmitting the disease.  All

interstate travel has become hazardous.

And there is no doubt that prisons have always been, and remain, incubators for disease.

The novel coronavirus is no exception.  That is why the BOP cancelled all visits in March, when

a national emergency was declared, and continues to restrict visiting to this day, although it has

apparently made an exception for visitors to the execution.

2

Nevertheless, on June 15, with numbers of COVID-19 cases growing exponentially around the country, and USP Terre Haute still on lockdown, Defendants set Mr. Lee's execution date for 28 days later.  Twenty-seven days into that 28-day period, as the pandemic grows only more ferocious, they continue to push forward, full steam ahead.

Mr. Lee is entitled to have his counsel present – in person – in the days leading up to, and at, his execution.  But if this execution goes forward on July 13, Defendants will have constructively denied these rights because Defendants have put counsel in the unthinkable (and ethically-conflicted) position of choosing between their professional obligations to Mr. Lee, and their self-interest in their own health and safety, and that of their families and communities.

In arbitrarily and unlawfully choosing a July 13 execution date, Defendants have abused their discretion and constructively deprived Mr. Lee of the counsel to which he is entitled by law.

## Argument

### I.      The Standard For Obtaining a Preliminary Injunction Are Well Established.

The Seventh Circuit has established a four-prong test for a litigant to obtain a preliminary injunction.  Mr. Lee must show that: (1) his claims are likely to succeed on the merits; (2) he would likely suffer irreparable harm if the injunction were not to be granted; (3) the balance of equities favors him; and (4) the injunction would serve the public interest.  *See Whole Woman's Health All. V. Hill*, 937 F.3d 864, 875 (7th Cir. 2019) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "A party moving for preliminary injunctive relief need not demonstrate a likelihood of absolute success on the merits. Instead, he must only show that his chances to succeed on his claims are better than negligible." *Valencia v. City of Springfield*, 883 F.3d 959, 966 (7th Cir. 2018) (quoting *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. Of Educ.,* 858 F.3d 1034, 1046 (7th Cir. 2017).

The Seventh Circuit "'employs a sliding scale approach' for this balancing: if a plaintiff is more likely to win, the balance of harms can weigh less heavily in its favor, but the less likely a plaintiff is to win[,] the more that balance would need to weigh in its favor." *GEFT Outdoors, LLC v. City of Westfield*, 922 F. 3d 357, 364 (7th Cir. 2019) (citing *Planned Parenthood of Ind. & Ky., Inc. v. Comm'r of Ind. State Dep't of Health*, 896 F.3d 809, 816 (7th Cir. 2018)).

## II.      Mr. Lee is Likely to Succeed on the Merits of his Claim.

### A.  The Basis for Mr. Lee's Claim.

In its recent decision granting a preliminary injunction in *Peterson v. Barr,* Doc. # 20, at 6-7, 2:20-cv-00350 at 6-7 (S.D. Ind. July 10, 2020), this Court explained the relevant standards of the Administrative Procedure Act:

> The APA 'sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts.'" *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 104 S.Ct. 1891, 1905 (2020) (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 796 (1992)). "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. Moreover, "[t]he APA established a 'basic presumption of judicial review [for] one suffering legal wrong because of agency action.;" *Regents of the Univ. of California*, 140 S.Ct. at 1905 (quoting *Abbot Labs. v. Gardner*, 387 U.S. 136, 140 (1967)).

Mr. Lee has asserted in his Complaint that Defendants violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), because, in setting Mr. Lee's execution date, Defendants' actions were "arbitrary and capricious manner, an abuse of discretion, or otherwise not in accordance with law." Section 3599 of the FDPA provides that a person sentenced to death is entitled to qualified counsel for proceedings including applications for writ of certiorari to the Supreme Court of the United States, and all available post-conviction process, together with applications for stays of execution and other appropriate motions and procedures, and at competency proceedings, and proceedings for executive clemency.  18 U.S.C. § 3599(e).  The

FDPA's implementing regulations provide that "[b]eginning seven days before the designated date of execution, the prisoner *shall have access* only to … his defense attorneys." 28 C.F.R. § 26.4(b) (emphasis added).  Moreover, "the following persons *shall be present at the execution*: … (ii) Two defense attorneys."  28 C.F.R. § 26.4(c)(ii) (emphasis added).  Arkansas law also requires that counsel "shall be present" at his or her client's execution, if counsel so chooses.  Ark. Stat. § 16-90-502.

Mr. Lee has a significant chance of success on the merits of his claim.  By virtue of Defendants' choice of an execution date in the midst of an uncontrolled lethal pandemic that is worsening by the day, they have made it impossible for counsel safely to travel to the place of Mr. Lee's incarceration or planned execution.  The date Defendants' chose was not required by law; Mr. Lee's right to have counsel present is.

Thus, Defendants' action was arbitrary and capricious, was an abuse of their discretion and was not in accordance with the law.

## B.  The Government's Decision is Subject to Judicial Review.

Defendants do not have unfettered discretion in setting an execution date despite the provisions of 5 U.S.C. § 701(a)(1) and (2). "The Administrative Procedure Act embodies a 'basic presumption of judicial review[.]" *Abbott Laboratories v. Gardner*, 387 U.S. 136, 140 (1967)." *Dep't of Commerce v. New York*, 588 U.S. __ , 139 S.Ct. 2251, 2568 (2019). As this Court noted in *Peterson, supra* at 7*, "*

> courts are directed to read § 701(a)(2)'s exception 'quite narrowly, restricting it to those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.' *Dep't of Commerce v. New York*, 139 S.Ct. 2251, 2568 (2019)(internal quotation omitted).  . . . [A]gency decisions regarding implementation of the death penalty are not categorically off limits. *See generally Execution Protocol Cases*, 955 F.3d 106 (reviewing claims regarding agency's execution protocol under the APA).

5

. . .

Here, the Federal Death Penalty Act of 1994 (FDPA) provides the relevant standards. . . . "When the sentence is to be implemented, the Attorney General shall release the person sentenced to death to the custody of a United States marshal, who shall supervise implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed."  [18 U.S.C. § 3596(a).

Under Ark. Stat. § 16-90-502, although the execution of a person sentenced to death

"shall be private, … the following persons shall be present: (E) Counsel for the person being

executed if he or she chooses to be present."

So, too, § 3599 of the FDPA entitles death-sentenced individuals to counsel through

every step of their proceedings, and 28 C.F.R. § 26.4 provide that such persons shall have the

right to have counsel present – in person – in the seven days prior to the execution and as a

witness to the execution.  Because Defendants are required to implement all parts of § 26, they

may not choose a date that precludes the provision of rights granted by other sections of the Act.

Just as Defendants could not choose a date for an execution if no adequate facility were available

in which to carry it out, neither can they choose a date if that date effectively precludes counsel –

whose presence is provided for in the same regulations – from being present.

## C.  Mr. Lee Is Inarguably Within the Administrative Procedure Act's Zone of Interests.

Even if the zone of interests test were a demanding one, which it is not, there can be no

argument that Mr. Lee, for and about whom these regulations apply, is squarely within that zone.

*See, e.g., Cook Cty Illinois v. Wolf*, 962 F.3d 208, 215 (7th Cir. 2020).

## D.    Defendants' Decision was Arbitrary, Capricious, an Abuse of Discretion, and Not in Accordance with Law.

No provision of the FDPA or its implementing regulations required Defendants to pick a

particular date for Mr. Lee's execution.  *See,* 28 C.F.R. § 26.3(a)(1).  Defendants operate under

6

no statute of limitations.  The date of July 13, 2020, was arbitrary. Defendants' decision was capricious because they chose a date in the midst of a pandemic without any apparent thought to whether such a date would preclude witnesses and counsel from attending, as provided for in the regulations. In doing so, they have, in fact, effectively precluded witnesses and counsel from attending.  This renders Defendants' actions an abuse of discretion. And because Defendants have constructively deprived Mr. Lee of counsel to which he is entitled to pursuant to the FDPA and the regulations, Defendants have failed to act in accordance with the law.

Moreover, throughout this process, Defendants have claimed they were moving forward with such speed to further the interests of the victims' family members.  It is clear, however, from the lawsuit filed by family members that they, too, wish to enjoin Defendants from proceeding with this execution because they, too, would risk their health and safety to attend. *See Peterson v. Barr, supra.* Thus, Defendants' rationale is pretextual, and an abuse of discretion.  Where "an explanation for agency action … is incongruent with what the record reveals about the agency's priorities and decisionmaking process," a court "cannot ignore the disconnect between the decision made and the explanation given. . . . Accepting contrived reasons would defeat the purpose of the enterprise." *Dep't of Commerce v. New York*, *supra*, 588 U.S. __,  139 S.Ct. at 2575-76.

Mr. Lee is likely to succeed on this meritorious claim.

### III.     Mr. Lee Will Suffer Irreparable Harm.

If this execution goes forward on July 13, Mr. Lee will suffer irreparable harm.  First, and most obviously, he will be executed with no one present to intercede and advocate on his behalf, or contact the court, if something during the execution itself goes awry.  History has recorded all

too well the many botched executions using lethal injection that have occurred in recent years.[1]

This is the first execution the federal government has conducted in 18 years and the first time the

BOP will be employing its new protocol. Moreover, the execution will be taking place during a

pandemic which may have resulted in last minute substitutions of execution team members.

Moreover, Mr. Lee will be prevented from meeting his impending death with any sense

of peace or acceptance, without counsel present to keep him abreast of last minute legal

developments, interceding for him as necessary with prison staff, hearing his final wishes, and

knowing counsel is not present to step in if a problem arises.

If the execution goes forward on July 13, Mr. Lee will also have been deprived of in-

person access to counsel over the period of the week before his execution, a time when a person

condemned to die has innumerable and highly personal legal matters to discuss with counsel –

confidential conversations that must be had face-to-face with a trusted adviser.  *See, e.g.,* Exh. D

to Complaint, Declaration of George H. Kendall, at ¶¶ 8-19, 39, 40-42.

These harms are only irreparable if Mr. Lee's execution goes forward on July 13, 2020.

They can easily be remedied by temporarily enjoining his execution until a later date, when the

---

[1]  These include, for example, Joseph Lewis Clark's execution by lethal injection, in 2006, which took nearly 90 minutes; Angel Nieves Diaz's execution by lethal injection, in 2006, when he needed an additional dose of drugs and the process took 34 minutes instead of the "usual" 7.5 minutes; Romell Broom's execution by lethal injection in 2009, where he cried in pain after receiving 18 needle sticks and which was called off after two hours;  Joseph Wood's execution by lethal injection in 2014, which took 2 hours, and during which he was injected with the drug cocktail 15 times, even though a single dose was to supposed to be sufficient;  Clayton Lockett, who suffered a heart attack during his execution by lethal injection in 2014; and Doyle Lee Hamm, whose execution failed in 2018, after the execution team spent more than two and a half hours, stabbing him with needles in an attempt to find a suitable vein. Michael Radelet, *Examples of Post-Furman Botched Executions*, March 1, 2018, (reporting a total of 39 botched executions by lethal injection since 1982.  *See also,* Austin Sarat, *Gruesome Spectacles: Botched Executions and America's Death Penalty* (Stanford Univ. Press 2014) (reporting a 7.12% of botched executions by lethal injection – 75 out of 1,054.).
https://deathpenaltyinfo.org/executions/botched-executions (last visited July 11, 2020)

current surge in the pandemic has abated and counsel can carry out their professional obligations to Mr. Lee as the FDPA and regulations intend.

## IV.     The Balance of Equities Favors Mr. Lee. The Harm to the Government is de Minimis.

As noted, Mr. Lee will suffer irreparable harm if this execution takes place on July 13.

Defendants will suffer no harm to their interests if the execution date is modified to a time when counsel can, in relative safety, travel to fulfill their professional obligations to Mr. Lee, as set out under the Model Rules and ABA Standards, and provide him with counsel as contemplated by 18 U.S.C. § 3599(e). The balance of equities favors Mr. Lee: his access to counsel is paramount, as is recognized 18 U.S.C. § 3599(e) and 28 C.F.R. Part 26.

In previous litigation during which stays and preliminary injunctions have been sought, Defendants have typically claimed they are entitled to the assurance of finality and to the prompt and orderly execution of Mr. Lee's death sentence. But the Government's actions with regard to preparing in the midst of this pandemic for this execution can hardly be called "orderly."  Over the past several weeks, the BOP has continued to revise its execution plans to account for the danger of introducing COVID-19 into the prison and protect those coming into the prison for the execution.

The Government's paramount interest should be in ensuring the health and safety of the public, and in faithfully administering *all* the laws and regulations that constrain it, including those it may find inconvenient.[2]

---

[2] As noted by legal ethics scholar Bruce Green, the choice of this date by the Government is a violation of the Rules of Professional Conduct because it constitutes an interference with the administration of justice.  Exh. E, Declaration of Bruce Green at ¶¶ 16-19.

**V.      A Preliminary Injunction Would Serve the Public Interest.**

The public interest would be ill-served by the Government pushing forward with this

execution on July 13.   Mr. Lee's lawyers would be forced to make an untenable choice:  On the

one hand, they could "choose" to fulfill their professional obligations to their client and risk their

health, safety, and possibly their lives; risk exposing their families, communities, and fellow

hapless travelers to the virus, picked up in the course of traveling and entering into a prison

which already harbors COVID; and – because they will have traveled by air and through

multiple states to get to the prison, risk bringing COVID-19 into USP Terre Haute and causing a

an outbreak in the prison.  On the other hand, they could "choose" to abandon their client at this

critical juncture, and leave him without counsel in his final hours and in the execution chamber.

From a broader view, the public has an interest in knowing that its Government will act

in rational, if not compassionate, ways to fulfill its obligations in a manner consistent with

preserving the health and welfare of its people.  Federal agencies across the government,

including the BOP and DOJ, have appropriately cancelled all but essential travel for its

employees and have taken steps to ensure that people with COVID-vulnerabilities (or who have

family members with such vulnerabilities) be permitted to work from home.[3]

To the very real extent going forward with Mr. Lee's execution will expose a large prison

population, including prisoners and staff, to an influx of outsiders who have traveled to Terre

Haute from around the country, and will expose countless (and hapless) others in the Terre Haute

community, in the airports, airplanes, and home communities as the travelers return home, the

public has an interest in believing its Government has a greater interest in preserving the lives

---

[3] *See* Complaint, ¶ 48.

and health of the general public than its interest in executing one man right now, when that interest can be fulfilled at a later date.

## VI.    Mr. Lee's Claim is Timely.

Mr. Lee has already raised concerns about his access to counsel due to the COVID-19 pandemic in at least two courts. It was the centerpiece of a motion he filed in the Eastern District of Arkansas, asking that court to exercise its inherent authority to modify Mr. Lee's execution date because of the health crisis and its implications for Mr. Lee's access to counsel.[4]  In denying Mr. Lee's request on July 10, 2020, that court said it was "very sympathetic to the concerns regarding the Covid-19 crisis and all the possible effects it could have on this situation" and noted that Mr. Lee's concerns about the effectiveness of counsel are "litigable." *Lee v. Barr*, Case 4:97-cr-00243-LPR, Doc. # 1425, at 10 (E.D. Ark. July 10, 2020).

In addition, Mr. Lee, along with three other death-sentenced prisoners with current execution dates, raised concerns about lack of access to counsel due to the pandemic in their still-pending lethal injection litigation. *See* Plaintiffs' Motion for Preliminary Injunction, *In the Matter of the Federal Bureau of Prisons' Execution Protocol Cases*, No. 1:19-mc-00145-TSC, Doc. 102, p. 45-50 (D. D.C. June 19, 2020); Reply in Support of Motion for Preliminary Injunction, *In the Matter of the Federal Bureau of Prisons' Execution Protocol Cases*, No. 1:19-mc-00145-TS, Doc. 118, p. 23-29 (D. D.C. June 29, 2020). A telephonic conference was held in this case at 1:00 p.m. Eastern, July 11, but the matter has not yet been decided.

---

[4]  This was not an action requesting a stay or preliminary injunction but was instead a request that the court re-set Mr. Lee's execution date based on its inherent authority to do so.

11

Thus, Mr. Lee has been diligently litigating his claim that Defendants have interfered with and constructively denied him his right of access to counsel by setting his execution date in the midst of this crisis throughout the warrant period.

Finally, it is worth noting that over the course of the past four weeks during which Mr. Lee has been under warrant, the health emergency caused by COVID has spiraled out of control, with numbers in the U.S. between July 10 and 11 reaching a staggering 66,000+ new confirmed cases. Defendants should, of their own accord, realize this is not the time to force a convergence of out-of-towners on a small city in Indiana.  Mr. Lee's request has only become more timely as his execution date approaches.

## Conclusion

For the above reasons, and based on the facts alleged in his Complaint, Mr. Lee respectively asks this Court to grant a preliminary injunction.

Respectfully submitted,

/s/Amy Gershenfeld Donnella

Amy Gershenfeld Donnella
Assistant Federal Defender
Federal Capital Habeas Project
6411 Ivy Lane, Suite 710
Greenbelt, MD  20770
(301) 641-6103
(301) 344-0019 (fax)
Amy_Donnella@fd.org

/s/ John P. Nidiry
John P. Nidiry
Staff Attorney
Federal Capital Habeas Project
6411 Ivy Lane, Suite 710
Greenbelt, MD  20770
(301) 807-1267
(301) 344-0019 (fax)
John_Nidiry@fd.org

/s/ Elizabeth Brown Luck
Elizabeth Brown Luck
Staff Attorney
Federal Capital Habeas Project
6411 Ivy Lane, Suite 710
Greenbelt, MD  20770
(301) 456-3072
(301) 344-0019 (fax)
Elizabeth_Luck@fd.org

Dated:  July 12, 2020